# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**FILED**

July 20, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JACK CLAY,**
**Claimant Below, Petitioner**

vs.)   **No. 18-0278** (BOR Appeal No. 2052219)
            (Claim No. 2014016156)

**CHOJNACKI CONSTRUCTION, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jack Clay, by Edwin H. Pancake, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Chojnacki Construction, Inc., by Steven Wellman, its attorney, filed a timely response.

The issue on appeal is the amount of Mr. Clay's permanent partial disability. On October 10, 2014, the claims administrator granted Mr. Clay a 3% permanent partial disability award. The Workers' Compensation Office of Judges affirmed the claims administrator's decision in a Final Order dated September 15, 2017. This appeal arises from the Board of Review's February 26, 2018, Order, which affirmed the decision of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Clay, an equipment operator, was injured on November 13, 2013, when he was at the back of his truck when another truck hit him and pinned his right lower extremity between the two trucks. Mr. Clay underwent a variety of tests and treatment for his injuries, including an MRI performed at Cabell Huntington Hospital on February 21, 2014. The MRI revealed evidence of a grade 2 quadriceps strain injury and a grade 2 sprain of the fibular collateral ligament. Mr. Clay was examined by Stanford Israelson, M.D., with Marshall Health, on May

1

30, 2014. Dr. Israelson noted that Mr. Clay was experiencing right knee pain associated with tingling and weakness with occasional radiation down his leg. Dr. Israelson disagreed with the findings of the MRI. Mr. Clay's knee flexion and extension was measured as 4+/5. Dr. Israelson ordered six weeks of physical therapy for the treatment of Mr. Clay's right quad and hamstring strengthening.

On June 3, 2014, the claims administrator approved additional components of the claim that included sprain and strain of an unspecified site of the knee and leg, contusion of the thigh, and motor vehicle collision with pedestrian injury. Mr. Clay continued treatment and participated in physical therapy and a home exercise program for his patellofemoral symptoms. Physical Therapist Michael Kennedy submitted a report dated June 24, 2014, that noted Mr. Clay's right knee range of motion was found to be 0 to 130 degrees. His quadriceps strength was noted to be 5/5. Mr. Kennedy found that Mr. Clay was ambulating while bearing equal weight. No additional physical therapy was scheduled.

On July 15, 2014, Mr. Clay was evaluated by John J. Jasko, M.D., who is with Marshall Orthopedics. Dr. Jasko found full range of motion of the right knee and noted tenderness along the medial joint line. Although slight weakness was found in the quad on the right, Dr. Jasko concluded that Mr. Clay was not in need of surgical intervention. Dr. Jasko recommended that Mr. Clay complete his scheduled physical therapy followed by a functional capacity evaluation.

Ramanathan Padmanaban, M.D., provided an independent medical evaluation report dated September 18, 2014. In his report, Dr. Padmanaban found Mr. Clay to be at maximum medical improvement, as far as the right thigh contusion and right knee strain were concerned. Although Dr. Padmanaban found that Mr. Clay still had some dysesthesia along the lateral femoral cutaneous nerve distribution, he concluded that the total impairment calculated by combining the impairments from right hip, right knee, and lateral femoral cutaneous nerve dysesthesia would entitle Mr. Clay to 3% whole person impairment.

Based upon Dr. Padmanaban's independent medical evaluation report, the claims administrator closed Mr. Clay's claim for temporary total disability benefits in an Order dated October 9, 2014. On October 10, 2014, the claims administrator granted Mr. Clay a 3% permanent partial disability award. Mr. Clay protested the claims administrator's 3% award.

Mr. Clay was evaluated by Bruce A. Guberman, M.D., on January 20, 2015. Dr. Guberman concluded that Mr. Clay had reached his maximum medical improvement. Dr. Guberman's impression was status post soft tissue injury to the right thigh with hermatoma status post aspiration of hematoma times two, persistent symptomatic scarring, persistent sensory loss, and chronic post traumatic right knee strain. Dr. Guberman found that Mr. Clay suffered a crush type injury to his right leg, especially at the right knee and the medial right thigh, when his right leg was crushed between two trucks on November 13, 2013. Although Mr. Clay had developed hematoma following the injury, Dr. Guberman did not find evidence of hematoma during examination. Dr. Guberman found that Mr. Clay has a scar that is symptomatic, as well as sensory loss over the anteromedial aspect of the right knee. Dr. Guberman also found weakness of extension of the right knee. Using the American Medical Association's, *Guides to the*

*Evaluation of Permanent Impairment* (4th ed. 1993), Dr. Guberman concluded that Mr. Clay had 7% whole person impairment. Because Mr. Clay had previously been granted a 3% award for his injury, Dr. Guberman recommended an additional 4% permanent partial disability impairment award.

Mr. Clay was evaluated by Prasadarao Mukkamala, M.D., on September 9, 2015. In his independent medical evaluation report dated September 17, 2015, Dr. Mukkamala found that Mr. Clay had returned to full duty work without restrictions and was at maximum medical improvement. Dr. Mukkamala found that Mr. Clay was able to ambulate on a straight line without any problems. He also was able to ambulate on heel and toes, but with difficulty. Mr. Clay presented with some tenderness over his right quadriceps muscles in the right thigh area. Right knee range of motion showed flexion of 130 degrees, and extension was 0 degrees. The patellar compression test was negative for any patellofemoral problems. Dr. Mukkamala concluded that Mr. Clay's injury would have moderate impact on his everyday work activities and daily living. Using the *Guides*, Dr. Mukkamala recommended 3% whole person impairment for his right thigh, right knee injury, and right hip pain. On October 3, 2016, Dr. Mukkamala submitted an addendum report following the addition of the right knee as a listed compensable condition in the claim. Dr. Mukkamala examined Mr. Clay's right knee at the time of his evaluation on September 9, 2015, and opined that Mr. Clay's range of motion was within normal limits. In his addendum report, Dr. Mukkamala stated that there were no ratable conditions for the knee, and Mr. Clay was only entitled to a rating of 3% whole person impairment.

On September 15, 2017, the Office of Judges affirmed the 3% permanent partial disability award granted by the claims administrator. Mr. Clay protested the claims administrator's decision and argued that he was entitled to an additional 4% permanent partial disability award based upon the recommendation of Dr. Guberman. In his report, Dr. Guberman attributed impairment to Mr. Clay's continued weakness of the extension of the right knee. Dr. Guberman was the only physician to find impairment for extension weakness. Drs. Mukkamala and Padmanaban did not find issues with weakness of extension of the right knee. Following physical therapy with Michael Kennedy, PT, Mr. Clay's leg was re-assessed on June 6, 2014, and revealed 0-130 degrees of right knee motion and 5/5 quad tone. The Office of Judges reasoned that Mr. Kennedy's assessment, combined with there being no finding made by Dr. Padmanaban or Dr. Mukkamala that Mr. Clay has weakness of extension of the right knee, rendered Dr. Guberman's finding of impairment for weakness of extension of the right knee is unpersuasive. Ultimately, the Office of Judges concluded that Mr. Clay failed to show that he is entitled to a greater permanent partial disability award. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 26, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The preponderance of the evidence indicates that Mr. Clay is only entitled to a 3% permanent partial disability award.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous

conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 20, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating

4